UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

| | |
|---|---|
| TOMMY PUCKETT and ROGER M. VANCE, JR., <br><br> Plaintiffs, <br><br> V. <br><br> LEXINGTON-FAYETTE URBAN COUNTY GOVERNMENT, et al., <br><br> Defendants. | CIVIL ACTION NO. 5:13-295-KKC <br><br><br> **OPINION AND ORDER** |

This matter is before the Court on two motions to dismiss. The first motion is brought by defendant Commonwealth of Kentucky. (DE 8). The second motion is brought by the Lexington-Fayette Urban County Government, the Lexington-Fayette Urban County Council, Vice Mayor Linda Gorton, Councilman Chuck Ellinger, Councilman Steve Kay, Councilman Chris Ford, Councilwoman Shevawn Akers, Councilwoman Diane Lawless, Councilman Julian Beard, Councilman Bill Farmer, Jr., Councilman Kevin Stinnett, Councilwoman Jennifer Scutchfield, Councilman George Myers, Councilwoman Jennifer Mossotti, Councilman Harry Clarke, Councilwoman Peggy Henson, Councilman Ed Lane, Mayor Jim Gray, the Board of Trustees Policemen's and Firefighters' Retirement Fund, Boardmember Ronnie Bastin, Boardmember Keith Jackson, Boardmember William O'Mara, Boardmember Clay Mason, Boardmember John Maxwell, Boardmember Bat. Chief Chris Sweat, Boardmember Det. Larry Kinnard, Boardmember Capt. Andrew Short, and Boardmember Sgt. Jonathan Bastian (collectively "the LFUCG defendants"). (DE 14). Plaintiffs Tommy Puckett and Roger M. Vance, Jr., sue each of the individual defendants in their official capacities only. (DE 14). For the following reasons, the Court will grant defendants' motions.

# I. FACTS

Both plaintiffs are retired employees of the Lexington-Fayette Urban County Government ("LFUCG"). (DE 1, Complaint ¶¶ 11-12). One is a retired police officer, the other is a retired firefighter. Both are members of the LFUCG's Policemen's and Firefighters' Retirement Fund ("the Fund"), which is governed by the Police and Firefighters' Retirement and Benefit Fund Act set out in KRS 67A.360 through KRS 67A.690 ("the Act"). (DE 1, Complaint ¶¶ 2, 18, 28). KRS 67A.690 provides cost of living adjustments ("COLA") for the Fund annuities. The plaintiffs assert that recent amendments to KRS 67A.690 have substantially reduced the rate at which COLA are made to members of the Fund. (DE 1, Complaint ¶¶ 40, 42). When the plaintiffs retired in 2009 and 2010, KRS 67A.690(1) for COLA of 2% to 5% per year, compounded annually, with the exact amount to be determined by the Fund's pension board. KRS 67A.690(1) (2002). On March 14, 2013, an amended version of KRS 67A.690 went into effect. Under the amended version of the statute, in years where the Fund's actuarial level is less than 85%, the statute as amended provides for tiered COLA of 1%, 1.5%, or 2%, depending on the value of the member's annuity. KRS 67A.690(1)(b) (2013). The amended statute applies to Fund members who retired prior to the effective date of the statute, including plaintiffs. The plaintiffs argue that the amended version of KRS 67A.690 violates the Contract Clause, the Due Process Clause and the Takings Clause of the United States Constitution and the analogous provisions of the Kentucky Constitution. The plaintiffs also assert that the amended statute violates § 55 of the Kentucky Constitution.

## II. STANDARD OF REVIEW

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the "factual allegations in the complaint must be regarded as true." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (quoting *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983)). Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal citations omitted). In order to survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id*. The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" and to nudge his claim "across the line from conceivable to plausible." *Id*. at 570.

## III. ANALYSIS

In this case, the plaintiffs have asserted only one constitutional right: the right to receive COLA benefits at a rate of 2% to 5%. (DE 1, Complaint ¶¶ 47, 61, 72, 79). While the plaintiff retirees make arguments under Kentucky state law concerning their vested pension rights, this Court's ruling is strictly limited to whether the plaintiffs have a right to COLA under the prior version of KRS 67A.690 and does not concern the pensions underlying those COLA.

All of the plaintiffs' constitutional claims depend on a finding of a legally cognizable contract or property right in the pre-amendment COLA rate of 2% to 5%. *See Gen. Motors Corp. v. Romein*, 503 U.S. 181, 186–87 (1992) (stating that Contract Clause claims require proof of a contractual relationship); *McCarthy v. Middle Tenn. Elec. Membership Corp.*, 466 F.3d 399, 412 (6th Cir. 2006) ("Both . . . due process and takings claims require that the plaintiffs first demonstrate that they have a legally cognizable property interest."). Thus, the threshold issue in this action is whether the plaintiffs have a constitutionally protected contract right or property right to COLA benefits based on the statutory COLA formula in effect on the date they retired.

**A. Contract Right**

In their complaint, the plaintiffs assert that a contractual agreement existed between the retired members of the Fund and the LFUCG for the provision of retirement annuities with annual COLA of 2% to 5% "[b]y virtue of KRS Chapter 67A." (DE 1, Complaint ¶ 47). The Complaint states that "[t]he agreement's terms are codified in the prior version of the Act." (DE 1, Complaint ¶ 48).

The Supreme Court has held that "absent some clear indication that the legislature intends to bind itself contractually, the presumption is that 'a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise.' " *Nat'l R.R. Passenger Corp. v. Atchison, Topeka, & Sante Fe Ry. Co.*, 470 U.S. 451, 465–66 (1985) (quoting *Dodge v. Bd. of Educ.,* 302 U.S. 74, 79 (1937)). A statute creates a contract only "when the language and circumstances evince a legislative intent to create private rights of a contractual nature enforceable against the State." *U.S. Trust Co. of New York v. New Jersey*, 431 U.S. 1, 18 n.14 (1977); *see also Nat'l R.R.,* 470 U.S. at 466 ("[T]o construe laws as contracts when the obligation is not clearly

4

and unequivocally expressed would be to limit drastically the essential powers of a legislative body.").

To overcome this presumption, the plaintiffs must show that the Kentucky General Assembly "clearly and unequivocally" intended to grant them a contractual right to COLA benefits at a rate of 2% to 5% under the prior version of KRS 67A.690. *Nat'l R.R.*, 470 U.S. 466. Statutory language, standing alone, may demonstrate such an intent if it expressly authorizes a contract or states that the benefits are contractual. *See, e.g., U.S. Trust Co.*, 431 U.S. at 18 (deriving clear intent to contract from the phrase "covenant and agree"); *Indiana ex rel. Anderson v. Brand*, 303 U.S. 95, 105 (1938) (holding that a statute's repeated use of the word "contract" demonstrated legislative intent to create a binding and enforceable obligation). "A statutory provision can also evince an unmistakable intent to contract if it expressly bars future amendments that would reduce benefits already granted." *Parella v. Ret. Bd. of the Rhode Island Employees' Ret. Sys.*, 173 F.3d 46, 60 (1st Cir. 1999).

Here, the plaintiffs have failed to plead sufficient facts to overcome the strong presumption that the Kentucky General Assembly did not intend to grant them a contractual right to COLA benefits at a rate of 2% to 5%. The plaintiffs have not identified any language in the Act or the prior version of KRS 67A.690 that expresses a clear and unequivocal intent to create a contractual obligation. Further, the plaintiffs have not pointed to any language that "expressly bars future amendments that would reduce benefits already granted." *Parella,* 173 F.3d at 60.

Moreover, a number of Kentucky statutes governing public employee retirement plans include language that expressly creates an "inviolable contract" between the public employer and the employee. *See, e.g.,* KRS 6.505(1)(b) (creating "an inviolable contract"

5

between a member and the Commonwealth concerning the Kentucky Legislators' Retirement Plan); KRS 16.652(1) (creating "an inviolable contract of the Commonwealth" in relation to the Kentucky State Police Retirement System). The plaintiffs have not directed the Court to any similar language creating an inviolable contract in KRS 67A.690 or elsewhere in the provisions of the Act governing the Fund. As the LFUCG defendants point out, the Court must presume that the legislature was aware of its prior enactments and could have used the same or similar language if it intended to create a contract. *See Manning v. Kentucky Bd. of Dentistry,* 657 S.W.2d 584, 587 (Ky. Ct. App. 1983) ("It is presumed that the legislature is acquainted with the law on the subjects on which it legislates and is informed of previous legislation and construction that it has previously received."). Therefore, the plaintiffs have not pled sufficient facts to demonstrate that a contract existed "[b]y virtue of Chapter 67A" between retired members of the Fund and the LFUCG for COLA of 2% to 5%.

In their response to the defendants' motions to dismiss, the plaintiffs argue that they "have an implied contract with Defendants for cost of living increases between two and five percent." (DE 17, p. 14). The plaintiffs further explain that "[b]y the language of the statute and the course of continued employment, an implied contract was created with LFUCG and the Commonwealth, the terms of which are set forth in the prior version of the Act." (DE 17, p. 16). While the plaintiffs frame this argument under an implied contract theory, they are essentially repeating their argument that the prior version of KRS 67A.690 created a contractual agreement between retired members of the Fund and the LFUCG. As acknowledged by the plaintiffs, "[i]n order to deem a state legislative enactment a contract for the purposes of the Contract Clause, there must be a clear indication that the legislature intends to bind itself in a contractual manner." (DE 17, pp. 14-15) (citing *Parker*

*v. Wakelin*, 123 F.3d 1, 5 (1st Cir. 1997). As previously discussed, the plaintiffs have failed to plead sufficient facts to indicate that the Kentucky General Assembly intended to bind itself in a contractual manner when it enacted KRS 67A.690. Therefore, defendants' motions to dismiss are granted as to the plaintiffs' claim under Contract Clause of the United States Constitution.

**B. Property Interest**

The plaintiffs also contend that they possess a protected property interest in the COLA formula set out in the prior version of KRS 67A.690. (DE 1, Complaint ¶¶ 61, 72, 79). The Supreme Court has explained that "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). "Property interests . . . are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id*.

The Sixth Circuit has stated that "a party cannot possess a property interest in receipt of a benefit when the state's decision to award or withhold the benefit is wholly discretionary." *Med Corp., Inc. v. Lima*, 296 F.3d 404, 409 (6th Cir. 2002) (citing *Richardson v. Township of Brady*, 218 F.3d 508, 517 (6th Cir. 2000); *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 62–63 (9th Cir. 1994) (explaining that the existence of a reasonable expectation of entitlement is determined by whether the language of the statute conferring the benefit is framed in mandatory terms and whether the statute imposes substantive constraints on official discretion to award the benefit)). In order to establish a

7

constitutionally protected property interest in a COLA rate of 2% to 5%, the plaintiffs "must point to some policy, law, or mutually explicit understanding that both confers the benefit and limits the discretion of the City to rescind the benefit." *Id.* at 410.

Here, the plaintiffs claim that the prior version of KRS 67A.690 was not discretionary because it provided that "the board *shall* increase his retirement annuity . . . by not less than two percent (2%) nor more than five percent (5%) . . . ." KRS 67A.690(1) (2002). Thus, the plaintiffs assert they have a constitutionally protected property right in a COLA rate of 2% to 5%, and the Kentucky General Assembly's amendment to KRS 67A.690 violated the Due Process Clause and the Takings Clause of the United States Constitution.

Even assuming that the plaintiffs have a constitutionally protected property interest in the pre-amendment COLA rate of 2% to 5%, they have not pled sufficient facts to state a plausible claim for relief under the Due Process Clause of the Fourteenth Amendment. The Fourteenth Amendment to the United States Constitution prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1. The clause has a procedural and a substantive component. Though "[t]he two components are distinct from each other because each has different objectives, and each imposes different constitutional limitations on government power," the Sixth Circuit has recognized that the distinctions are "often difficult to discern, and indeed often appear to converge." *Howard v. Grinage,* 82 F.3d 1343, 1349 (6th Cir. 1996). Procedural due process does not limit the government's power to "infringe upon a person's life, liberty, or property interest. It simply requires that the government provide 'due process' " before doing so. *Id.* Substantive due process, on the other hand, "serves as a vehicle to limit various aspects of potentially oppressive government action." *Id*. "While property interests are protected by procedural due process even though the interest is

8

derived from state law rather than the Constitution, substantive due process rights are created only by the Constitution." *Charles v. Baesler*, 910 F.2d 1349, 1354 (6th Cir. 1990) (quoting *Regents of the Univ. of Mich. v. Ewing,* 474 U.S. 214, 229 (1985) (Powell, J., concurring)).

Regarding the plaintiffs' procedural due process claim, it is well settled that once a property interest is created, it "cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). "However, the legislature which creates a statutory entitlement (or other property interest) is not precluded by having done so from altering or terminating the entitlement by subsequent legislative enactment." *Gattis v. Gravett*, 806 F.2d 778, 780 (8th Cir. 1986); *see also Pittman v. Chicago Bd. of Educ.*, 64 F.3d 1098, 1104 (7th Cir. 1995) ("The legislature can by amending the statute eliminate the property right[.]"). Further, "[w]hile the legislative alteration or elimination of a previously conferred property interest may be a 'deprivation,' the legislative process itself provides citizens with all the 'process' they are 'due.' " *Gattis*, 806 F.2d at 781 (citing *Atkins v. Parker*, 105 S.Ct. 2520, 2530 (1985)).

The plaintiffs claim that they were denied representation in the decision-making process by the creation of the LFUCG Police and Fire Pension Task Force ("the Task Force"), which addressed issues related to the Fund's fiscal liability. (DE 1, Complaint ¶¶ 65-66). However, the Task Force did not change the COLA statute. The Kentucky General Assembly amended KRS 67A.690, and the legislature has the authority to amend a statute to eliminate a property right. *Gattis*, 806 F.2d at 780; *Pittman*, 64 F.3d at 1104.

The plaintiffs also argue that they were denied due process because the legislative process to enact the March 14, 2013, amendment was flawed. The amended statute was passed as "emergency legislation" under § 55 of the Kentucky Constitution, and the

9

plaintiffs contend that no emergency existed and the procedure set out in § 55 was not followed. (DE 1, Complaint ¶¶ 89-90; DE 17, p. 29). The plaintiffs' argument is moot. Here, the statute's effective date was not affected by its designation as "emergency legislation". *Lyttle v. Keith*, 95 S.W.2d 299, 300 (Ky. 1936) (explaining that where the required emergency clause of an otherwise valid statute is inoperative, the statute takes effect at the time when it would have become operative without an emergency clause). In Kentucky, statutes passed under the general rule become operative "ninety days after the adjournment of the session at which it was passed[.]" Ky. Const. § 55. The plaintiffs' complaint was filed on September 11, 2013, well after the amended statute had become effective, whether as emergency legislation or under operation of the general rule. Therefore, this argument is moot.

The plaintiffs devote little argument to their substantive due process claim. (DE 1, Complaint ¶¶ 70-77; DE 17, p. 23). They only assert that their substantive due process rights were violated because the defendants "acted out of self-interest" rather than a concern for fiscal constraints when they amended KRS 67A.690. (DE 17, p. 23). Thus, the plaintiffs contend there was no rational basis to amend the COLA rates. (DE 17, p. 23).

"[S]ubstantive rights [that] are created only by state law (as is the case with tort law and employment law) are not subject to substantive due process protection under the Due Process Clause because 'substantive due process rights are created only by the Constitution.'" As a result, these state law based rights constitutionally may be rescinded so long as the elements of procedural—not substantive—due process are observed." *Young v. Twp. of Green Oak*, 471 F.3d 674, 684 (6th Cir. 2006). Government action that does not proscribe fundamental rights will not violate the Due Process Clause unless it imposes burdens without any rational basis for doing so. *American Exp. Travel Related Servs. Co.*

10

*Inc. v. Kentucky*, 641 F.3d 685, 689 (6th Cir. 2011). There is a presumption of legislative validity, and "the burden is on [the challenger] to show that there is no rational connection between the enactment and a legitimate government interest." *Id.* (alteration in original and internal quotation marks removed). "[T]he party challenging a legislative enactment subject to rational basis review must 'negative every conceivable basis which might support it.'" *Id.* at 690 (quoting *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 364 (1973)). Here, even taking the plaintiffs' factual allegations as true, they have failed to negate "every conceivable basis" which would support the enactment of the amended version of KRS 67A.690. Therefore, the plaintiffs have not pled sufficient facts to state a plausible claim for relief under either component of the Due Process Clause of the Fourteenth Amendment, and the defendants' motions to dismiss are granted as to these claims.

Additionally, even assuming that the plaintiffs have a constitutionally protected property interest in the pre-amendment COLA rate of 2% to 5%, they have failed to plead sufficient facts to state a plausible claim for relief under the Takings Clause of the Fifth Amendment. The Takings Clause provides that no "private property be taken for public use, without just compensation." U.S. Const. amend V. The term "property" is defined "much more narrowly [in the Takings Clause] than in the due process clauses. It encompasses real property and personal property, including intellectual property." *Pittman,* 64 F.3d at 1104 (citing *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1003-04 (1984)). A wide range of statutory entitlements are not covered by the Takings Clause, even though they covered by procedural due process safeguards. *See, e.g., Bowen v. Gilliard*, 483 U.S. 587 (1987) (no property right for takings purposes to continued welfare benefits at same level); *Schroeder v. City of Chicago,* 927 F.2d 957, 961 (7th Cir. 1991) (no property right for

11

takings clause purposes to receipt of disability benefit); *Adams v. United States*, 391 F.3d 1212, 1225 (Fed. Cir. 2004) ("[N]o statutory obligation to pay money . . . can create a property interest within the meaning of the Takings Clause.") Assuming the plaintiffs in this case have a constitutionally protected property right in a COLA rate of 2% to 5%, it is a statutory entitlement and is not the kind of property required for a Takings Clause claim. Therefore, plaintiffs have failed to plead sufficient facts to state a plausible claim for relief under the Takings Clause of the Fifth Amendment and defendants' motions to dismiss are granted as to this claim.

Finally, the Court notes that the plaintiffs have not pled any additional facts regarding their claims under the Contract Clause, the Due Process Clause, and the Takings Clause of the Kentucky Constitution. Because those clauses are analogous to the provisions in the United States Constitution and the Court has already determined that the plaintiffs have failed to plead sufficient facts to state plausible claim for relief under the federal provisions, the Court concludes that the plaintiffs have also failed to plead sufficient facts to state a plausible claim for relief under the Contract Clause, the Due Process Clause, and the Takings Clause of the Kentucky Constitution.

## IV. CONCLUSION

For the reasons above, the Court hereby **ORDERS** that the defendants' motions to dismiss (DE 8 and 14) are **GRANTED** and all claims against these defendants are **DISMISSED**.

Dated October 8, 2014.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY