UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| TOMMY PUCKETT and ROGER M. VANCE, JR., **Plaintiffs,** V. LEXINGTON-FAYETTE URBAN COUNTY GOVERNMENT, ET AL., **Defendants.** | CIVIL ACTION NO. 5:13-295-KKC <br><br> **OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on the plaintiffs' motion to alter or amend the Judgment and motion for leave to amend the Complaint. (DE 24). For the following reasons, the Court will deny both of the plaintiffs' motions.

## I. BACKGROUND

The plaintiffs, a retired police officer and retired firefighter, brought this suit to challenge a statutory amendment that affects the cost of living adjustments to their pensions. (DE 1, Complaint). Both plaintiffs are former employees of the Lexington-Fayette Urban County Government (LFUCG), and are therefore members of the LFUCG's Policemen's and Firefighter's Retirement Fund. (DE 1, Complaint ¶¶ 2, 11-12.)

KRS 67A.690 provides for cost of living adjustments ("COLA") to annuities that members of the Fund receive. Importantly, this statute has been amended multiple times, most notably in 1980 and 2013. The 1980 amendments increased the rate at which members were required to contribute to the fund and also increased the COLA rate for

1

retirees. 1980 Ky. Acts c. 329 (HB 376) §§ 1-3. Under the 1980 version, KRS 67A.690(1) provided for COLA at a rate of 2% to 5% per year, compounded annually, and charged the Fund's pension board with determining the exact adjustment amount. KRS 67A.690(1) (2002). When the plaintiffs retired in 2009 and 2010, that version of the statute was in place.

Effective March 14, 2013, KRS 67A.690 was amended again to provide for fixed COLA in years when the Fund's actuarial level is less than 85%. KRS 67A.690(1)(b) (2013). The 2013 version of the statute provides for tiered COLA of 1%, 1.5%, or 2%, depending on the value of the member's annuity. *Id.* The amended version of the statute now applies to the plaintiffs' pension annuities and determines the COLA they receive.

The plaintiffs asserted that the 2013 amendment to KRS 67A.690 has substantially reduced the rate at which cost of living adjustments are made to their pension annuities. (DE 1, Complaint ¶¶ 40, 42.) In their complaint, the plaintiffs alleged that the 2013 amendment of KRS 67A.690 violates the Contract Clause, Due Process Clause, and Takings Clause of the United States Constitution, as well as the equivalent sections of the Kentucky Constitution (DE 1, Complaint ¶¶ 45-87, 92-97). In addition, the plaintiffs alleged a violation of §55 of the Kentucky Constitution, which governs emergency legislation. (DE 1, Complaint ¶¶ 88-91).

The various defendants brought two motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). (DE 8, 14). The Court granted the defendants' motions, dismissing all claims. (DE 23). In response, the plaintiffs filed their current motions to alter or amend the Judgment and for leave to amend the Complaint. (DE 24).

retirees. 1980 Ky. Acts c. 329 (HB 376) §§ 1-3. Under the 1980 version, KRS 67A.690(1) provided for COLA at a rate of 2% to 5% per year, compounded annually, and charged the Fund's pension board with determining the exact adjustment amount. KRS 67A.690(1) (2002). When the plaintiffs retired in 2009 and 2010, that version of the statute was in place.

Effective March 14, 2013, KRS 67A.690 was amended again to provide for fixed COLA in years when the Fund's actuarial level is less than 85%. KRS 67A.690(1)(b) (2013). The 2013 version of the statute provides for tiered COLA of 1%, 1.5%, or 2%, depending on the value of the member's annuity. *Id.* The amended version of the statute now applies to the plaintiffs' pension annuities and determines the COLA they receive.

The plaintiffs asserted that the 2013 amendment to KRS 67A.690 has substantially reduced the rate at which cost of living adjustments are made to their pension annuities. (DE 1, Complaint ¶¶ 40, 42.) In their complaint, the plaintiffs alleged that the 2013 amendment of KRS 67A.690 violates the Contract Clause, Due Process Clause, and Takings Clause of the United States Constitution, as well as the equivalent sections of the Kentucky Constitution (DE 1, Complaint ¶¶ 45-87, 92-97). In addition, the plaintiffs alleged a violation of §55 of the Kentucky Constitution, which governs emergency legislation. (DE 1, Complaint ¶¶ 88-91).

The various defendants brought two motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). (DE 8, 14). The Court granted the defendants' motions, dismissing all claims. (DE 23). In response, the plaintiffs filed their current motions to alter or amend the Judgment and for leave to amend the Complaint. (DE 24).

## II. ANALYSIS

This case is not about whether the plaintiffs have a right to receive their pensions. Rather, the key question is whether the plaintiffs have a contract or property right in a COLA rate of between 2% and 5%, and, if they do, whether the 2013 amendment violated those rights. The Court will consider each of the plaintiffs' motions in turn.

**A. Motion to Alter or Amend the Judgment**

In their motion to alter or amend the judgment, the plaintiffs assert that the Court clearly erred in dismissing their Contract Clause, Due Process Clause, and Takings Clause claims. (DE 24).

Under Rule 59, a court may alter the judgment based on: "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.,* 616 F.3 612, 615 (6th Cir. 2010) (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)).

Since the plaintiffs assert that the Court's decision to grant the defendants' motions was clearly erroneous, it is also necessary to consider the standard for ruling on a motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(internal citations omitted). In order to survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" and to nudge his claim "across the line from conceivable to plausible." *Id.* at 570.

3

The Court's decision to grant the defendants' motions to dismiss was not clearly erroneous. The Court is cognizant of the plaintiffs' frustration because of the change to their COLA, but the plaintiffs have failed to plead sufficient facts to state a plausible claim to relief under the Contract Clause, Due Process Clause, or Takings Clause of the United States Constitution. Therefore, the Court will deny the plaintiffs' motion to alter or amend the judgment.

*1. Contract Clause*

The plaintiffs failed to plead sufficient facts to show they have a contractual right to the continuation of COLA benefits. [DE 23 at 4-7.]

Contracts Clause claims require proof of a contractual right and a change in law that substantially impairs that right. *General Motors Corp. v. Romein,* 503 U..S. 181, 186 (1992). A statute creates a contract only "when the language and circumstances evince a legislative intent to create private rights of a contractual nature enforceable against the State." *U.S. Trust Co. of New York v. New Jersey*, 431 U.S. 1, 18 n.14 (1977). "Absent some clear indication that the legislature intends to bind itself contractually, the presumption is that 'a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise.' " *Nat'l R.R. Passenger Corp. v. Atchison, Topeka, & Sante Fe Ry. Co.*, 470 U.S. 451, 465–66 (1985) (quoting *Dodge v. Bd. of Educ.,* 302 U.S. 74, 79 (1937)). To overcome the presumption in this case, the plaintiffs must show that the Kentucky General Assembly "clearly and unequivocally" intended to bind itself in a contractual manner. *Id.* at 466.

In their Complaint, the plaintiffs argue that they had a contract "[b]y virtue of KRS Chapter 67A. [DE 1, Complaint ¶47.] They assert "LFUCG was contractually obligated and statutorily committed to provide cost of living adjustments" between 2% and 5% "to

4

retirement annuity recipients in accordance with the [1980] version of the law." [DE 1, Complaint ¶ 47.] They insist that "the agreements terms are codified in the prior version of the Act." [DE 1, Complaint ¶ 48.]

This Court previously found that the plaintiffs "failed to plead sufficient facts to overcome the strong presumption that the Kentucky General Assembly did not intend to grant them a contractual right to COLA benefits at a rate of 2% to 5%" and therefore dismissed the plaintiffs' claim under the Contract Clause. [DE 23 at 7.] This Court noted the lack of any language in the 1980 version of KRS 67A.690 that indicated an intent to create a contract or barred future amendments. [DE 23 at 5.] The absence of any contractual language, coupled with the fact that other Kentucky statutes governing public employee retirement plans include language that expressly creates an "inviolable contract," convinced the Court that plaintiffs failed to plead sufficient facts to indicate that the Kentucky legislature intended to create a contract when it amended KRS 67A.690 in 1980. [DE 23 at 5-8.]

The plaintiffs make three main arguments in support of their claim that this Court's dismissal of their Contracts Clause claim was a clear error. First, the plaintiffs assert that the Court erred by not fully considering the "circumstances" surrounding their purported contract. [DE 24 at 5.]; *see U.S. Trust Co. of New York v. New Jersey*, 431 U.S. 1, 18 n.14 (1977). The plaintiffs claim that the 1980 amendment to KRS 67A.690 establishes that the "cost of living increases were plainly adopted in consideration of increased member contribution rates." [DE 24 at 5.] The 1980 amendments increased the rate at which members were required to contribute to the Fund while also providing COLA benefits to retirees at a higher rate. 1980 Ky. Acts c. 329 (HB 376) §§ 1-3. The plaintiffs point to the 1980 amendments as evidence of a contractual agreement. [DE 24 at 5-6.] They assert that

the simultaneous changes to the statute show a bargained for exchange in that members of the Fund agreed to make higher contributions in return for a greater COLA rate upon retirement.

The plaintiffs are correct that in 1980 the Kentucky legislature simultaneously increased member contribution rates and COLA rates, but that alone falls far short of demonstrating that the Kentucky General Assembly "clearly and unequivocally" intended to create a contract right. *Nat'l R.R.*, 470 U.S. 466. The Court cannot discern the existence of a contract from the simultaneous amendment of two parts of a statute. The plaintiffs have not directed the Court to any hearings, statements, or other legislative history outside the words of the statute in question that indicates the legislature intended to be contractually bound. Without such guidance, any attempt to discern the legislature's underlying intent is mere speculation. These "circumstances" simply do not provide a "clear indication" of the legislature's intent to create a contract right. *Id.* at 465-66.

The plaintiffs cite a New Jersey case, *Berg v. Christie*, 93 A.3d 387 (N.J. Super. Ct. App. Div. 2014), as an instance in which another court found that COLA were contractually protected based on legislative history. [DE 27, Plaintiffs' Reply at 5.] However, the statute at issue in *Berg* contained language creating a "non-forfeitable right to receive benefits." 93 A.3d at 406. The New Jersey court held that the COLA benefits in that case were protected because they fell within the scope of the "non-forfeitable rights" language based on the unique and extensive legislative record underlying the statute. *Id.* at 406-413. Here, KRS 67A.690 does not contain such language and plaintiffs have not cited any legislative history that suggests otherwise.

Second, Plaintiffs suggest that the Court should interpret the General Assembly's failure to disclaim the existence of a contract as evidence of the legislature's intent to create

6

contractual obligations. [DE 27, Plaintiffs' Reply at 3-4.] In support of this argument, the plaintiffs point to the Kentucky Legislators' Retirement Plan, the Kentucky Employees Retirement System, and the Kentucky Judicial Retirement Plan. KRS 6.521(2); 61.691(1), (2)(f); 21.405(5)(f). In each of these statutes, the General Assembly included language stating that the benefits described therein are not considered benefits protected under an inviolable contract. In other words, the plaintiffs contend that because the General Assembly knew how to disclaim the existence of a contract, its failure to do so in KRS 67A.690 evidences intent to create a contract.

The applicable presumption undermines this argument entirely. The fact that the General Assembly did not affirmatively deny the existence of a contract obligation in KRS 67A.690 is not sufficient to overcome the "well-established" presumption that the legislature did not intend to enter into a contract. *Nat'l R.R. Passenger Corp. v. Atchison, Topeka, & Sante Fe Ry. Co.*, 470 U.S. 451, 466 (1985). The United States Supreme Court has clearly warned that "to construe laws as contracts when the obligation is not clearly and unequivocally expressed would be to limit drastically the essential powers of a legislative body." *Id.* at 466. To find that the General Assembly created a contract via legislation because it failed to state there was no contract would be contrary to both the clear holding and rationale of Supreme Court precedent. The General Assembly was not obliged to disclaim the existence of a contract in KRS 67A.690 because the *National Railroad* presumption assumes the legislature did not intend to bind itself contractually.

Third, Plaintiffs claim that the Court clearly erred because it "never addressed whether cost of living benefits are severable from vested pension benefits." [DE 24 at 3,6; DE 27, Plaintiffs' Reply at 6.] The plaintiffs reiterate that under Kentucky law pension

7

benefits vest upon retirement and extend this to mean that COLA benefits should be forever frozen at the then-existing rate. [DE 24 at 3.]

As the Court held, the narrow question before the Court here is whether the plaintiffs have a contract right to COLA *at a rate between 2% and 5%,* not whether the plaintiffs are entitled to their pensions generally. [DE 23, Opinion and Order at 3.] The plaintiffs rely on KRS 67A.610, which they argue provides members with a vested interest in their contributions. [DE 24 at 8.] Indeed, that section provides, "Each member shall, by virtue of the payment of contributions to the fund, receive a vested interest in such contributions…" KRS 67A.610 (1982). However, a vested interest in pension *contributions* does not necessarily give the plaintiffs a vested interest in a fixed COLA rate. The plaintiffs wrongly equate a vested interest in contributions to a vested interest in anything related to their pensions. There is no indication in KRS 67A.690 that the General Assembly intended to treat COLA as "contributions" or otherwise grant a vested interest in COLA. Rather, as one Court noted, "By its very nature a statutory cost of living adjustment is a periodic exercise of legislative discretion that takes account of changing economic conditions in the state and/or nation," indicating that COLA are intended to be flexible rather than permanently fixed. *Justus v. State*, 336 P.3d 202, 209 (Colo. 2014). Despite their repeated assertions, the plaintiffs do not actually identify anything that gives them a vested interest in a COLA rate of 2% to 5%.

Lastly, the plaintiffs seem to suggest that because COLA are compounded annually, COLA are somehow unalterably intertwined with their pensions. [DE 27, Plaintiff's Reply at 4, n.2.] Rather, the "compounded annually" language in KRS 67A.690 is simply a method of calculating the yearly adjustment amount, just like compounded interest that accrues on a loan or bank deposit account.

8

Dismissing the plaintiffs' Contract Clause claim was not clearly erroneous because there is no contractual language in KRS 67A.690 showing that the legislature clearly intended to bind itself to paying Fund members COLA at a rate of between 2% and 5% in perpetuity. The "circumstances" surrounding the 1980 amendments, the General Assembly's failure to disclaim the existence of a contract in KRS 67A.690, and the vesting of the plaintiffs' contributions do not show that the legislature intended to create a contract right to a fixed COLA rate. By being unable to establish the existence of a contract right, the plaintiffs cannot state a plausible claim to relief under the Contract Clause.

*2. Due Process Clause*

The Court's dismissal of the plaintiffs' procedural and substantive due process claims was not a clear error. The Court found that even assuming the plaintiffs have a constitutionally protected property interest in a COLA rate of 2% to 5%, they still failed to plead sufficient facts to state a plausible claim for relief under either component of the Due Process Clause of the Fourteenth Amendment. [DE 23 at 11.]

The Court dismissed the plaintiffs' procedural due process claims because the process the defendants believe they were denied could not have affected the legislature's decision to amend the statute.

In Kentucky, statutes passed under the general rule become operative "ninety days after the adjournment of the session at which it was passed[.]" Ky. Const. § 55. However, an act that is designated emergency legislation by the General Assembly goes into effect when

9

it is signed by the Governor. *Id.* Thus, a statute goes into effect approximately ninety days earlier if it is emergency legislation.[1]

In their motion, the plaintiffs argue that there was a defect in the legislative processes because the bill amending KRS 67A.690 was "presented as emergency legislation when no such emergency existed." [DE 24 at 7.] Plaintiffs claim that "they would have had additional time to force Defendants to follow the process due had an emergency not been declared." [DE 24 at 8.]

KRS 67A.530 supposedly provides the "process set forth in the statute" that the plaintiffs claim they were denied. [DE 24 at 8.] The plaintiffs cite this statute in their Complaint. [DE 1, Complaint at ¶ 66.] It states, ""The responsibility for the proper operation of the fund and the direction of its policies shall be vested in a board of trustees of twelve (12) members . . ." KRS 67A.530 (2013). The rest of the statute discusses the composition and election of the twelve member Board. *See id.* The plaintiffs read this statute as providing them a right to some sort of process involving the Pension Board. In their papers, plaintiffs are not clear as to precisely what process they believe they are due under the statute. The Court is not entirely convinced that this statute gives the plaintiffs a right to process before the Pension Board, but will accept this premise in order to address the core of the plaintiffs' argument.

Even if the 2013 amendment to KRS 67A.690 was not designated emergency legislation and became effective as regular legislation at a later date, the process that the defendants seek – presumably some sort of hearing before the Pension Board or similar

---

[1] The precise time difference depends on the date on which the legislative session in question ends and how quickly the Governor signs the emergency legislation. For purposes of this analysis, it is sufficient to assume a difference of about ninety days, as the exact amount of time is not crucial.

procedure – would not have affected the amendment in any way because it was enacted by the Kentucky General Assembly, not the Pension Board. The General Assembly is the only entity with the authority to amend KRS Chapter 67A, and it cannot delegate that power to any other body, including the Pension Board. *Legislative Research Comm'n By & Through Prather v. Brown*, 664 S.W.2d 907, 915 (Ky. 1984). Therefore, only the General Assembly, and not the Pension Board, LFUCG, nor any other defendant, had sole responsibility for passing the amendment. Once passed by the General Assembly, the Pension Board could not have altered the amendment, regardless of whether it became effective as regular or emergency legislation.

To illustrate further, the Court will assume that the 2013 amendment to KRS 67A.690 was not passed as emergency legislation, but rather as regular legislation, and became effective approximately ninety days later than it actually did. The plaintiffs claim this would have given them "additional time to force the Defendants to follow the process due." [DE 24 at 8.] In other words, the plaintiffs allege they could have aired their grievances before the Pension Board during the ninety day period. But what would a Pension Board hearing during the ninety day period have accomplished? The plaintiffs being able to force the Pension Board to give them a hearing or other process after the General Assembly passed the amendment but before it became operative would have had no effect on the amendment of KRS 67A.690. The Pension Board does not have the power to override an amendment of the General Assembly. While the Court previously characterized this as a mootness issue, it is perhaps better labeled as a redressability issue. Even if the plaintiffs had a hearing or other process before the Pension Board, that process could not change or impact legislation adopted by the General Assembly. Nevertheless, the Court did not make a clear error in dismissing the plaintiffs' procedural due process claim.

Turning to the plaintiffs' substantive due process claim, this Court correctly found that the plaintiffs failed to allege facts sufficient to negate every conceivable rational basis for the 2013 amendment of KRS 67A.690. [DE 23 at 11.]

"[S]ubstantive rights [that] are created only by state law (as is the case with tort law and employment law) are not subject to substantive due process protection under the Due Process Clause because 'substantive due process rights are created only by the Constitution.' As a result, these state law based rights constitutionally may be rescinded so long as the elements of procedural—not substantive—due process are observed." *Young v. Twp. of Green Oak*, 471 F.3d 674, 684 (6th Cir. 2006). Government action that does not proscribe fundamental rights will not violate the Due Process Clause unless it imposes burdens without any rational basis for doing so. *American Exp. Travel Related Servs. Co. Inc. v. Kentucky*, 641 F.3d 685, 689 (6th Cir. 2011). There is a presumption of legislative validity, and "the burden is on [the challenger] to show that there is no rational connection between the enactment and a legitimate government interest." *Id.* (alteration in original and internal quotation marks removed). "[T]he party challenging a legislative enactment subject to rational basis review must 'negative every conceivable basis which might support it.' " *Id.* at 690 (quoting *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 364 (1973)).

Here, there are no fundamental rights at issue. The rights claimed by the plaintiffs are based only on state law. Accordingly, the 2013 amendment of KRS 69A.690 constitutes a substantive due process violation only if there was no rational basis for the amendment. *American Exp. Travel Related Servs. Co. Inc.*, 641 F.3d at 689. As stated above, there is a presumption that the 2013 amendment was valid, and the burden is on the plaintiffs to

demonstrate the absence of a rational basis in making the amendment by negating every conceivable basis which might support it. *Id.* at 689-90.

In House Bill 430, the General Assembly clearly expressed that its basis for amending KRS 67A.690 was to ensure "the financial integrity of the pension funds administered by urban-county governments." [DE 14-5, House Bill 430 §19.] To succeed on their substantive due process claim, the Plaintiffs must negate this rational basis. *American Exp. Travel Related Servs. Co. Inc. v. Kentucky*, 641 F.3d 685, 690 (6th Cir. 2011).

The plaintiffs have not stated any facts explaining why the basis articulated by the General Assembly is not rational. The plaintiffs claim that the Mayor and LFUCG "simply wanted to spend the money elsewhere," [DE 27, Plaintiffs' Reply at 9.] and make other similar claims regarding the defendants' motivations [*see* DE 24 at 10.], but this does not speak to the *General Assembly's* basis for passing the amendment. The plaintiffs therefore cannot negate "every conceivable basis" that would support the 2013 amendment, as they have not even offered any reason why the General Assembly's explicitly stated basis is irrational. Therefore, the Court's finding that the plaintiffs have not stated a plausible substantive due process claim was not clearly erroneous.

### *3. Takings Clause*

The Court previously found that even assuming the plaintiffs have a property right, "it is a statutory entitlement and is not the kind of property required for a Takings Clause claim." [DE 23 at 12.] The Court's dismissal of the plaintiffs' Takings Clause claim on this basis was not a clear error.

Plaintiffs argue that the Court incorrectly treated COLA as a statutory entitlement. The plaintiffs instead characterize COLA as "deferred compensation," and attempt to distinguish COLA from "gratuities or benefits provided solely from taxes." [DE 24 at 11.]

13

The plaintiffs take issue with the Court's citation to *Bowen v. Gilliard*, 483 U.S. 587 (1987), which held that there is no property interest in continued welfare benefits for purposes of the Takings Clause, and *Schroeder v. City of Chicago*, 927 F.2d 957, which held the same for receipt of disability benefits. The plaintiffs attempt to distinguish these cases based on the fact that "[p]laintiffs contributed a substantial portion of their salaries to pay for the pension and the cost of living increases when they retired." [DE 24 at 11.] In other words, the plaintiffs argue they earned money and contributed it to the Fund, so they are different than welfare or disability recipients who passively receive benefits. The plaintiffs believe this distinction takes them outside the meaning of "statutory entitlement."

The Court certainly respects and appreciates the fact that plaintiffs devoted many years of service to the community and contributed to their pension fund, but the plaintiffs nevertheless do not provide any authority indicating why they have something other than a claim of a statutory entitlement to money. Moreover, the Court also relied on *Adams v. United States*, 391 F.3d 1212 (Fed. Cir. 2004). *Adams* held that a claim against the government for six years of overtime compensation under the Fair Labor Standards Act was a "statutory entitlement to money" and therefore not a property interest under the Takings Clause. *Id.* at 1225. Certainly the plaintiffs in *Adams* also earned the money they were claiming as overtime compensation, but the Court still characterized their claim as a "statutory entitlement." Therefore, the distinction that the plaintiffs put forth in their motion does not affect the classification of their purported property interest as a "statutory entitlement."

Even if the Court assumes the plaintiffs have a property interest in a COLA rate of 2% to 5%, it would be a statutory right to be paid money. Therefore, the plaintiffs cannot

prove they are entitled to relief because they do not have a property interest that is protected by the Takings Clause.

In sum, the Court did not make a clear error in dismissing the plaintiffs' Contract Clause, Due Process Clause, and Takings Clause claims.

**B. Motion for Leave to Amend the Complaint**

The Court also denies the plaintiffs' motion for leave to amend the complaint because the amendment would be futile.

Federal Rule of Civil Procedure 15(a)(2) provides that a party may amend its pleadings with the court's leave, which "[t]he court should freely give. . . when justice so requires." Fed. R. Civ. P. 15(a)(2). A court, however, need not grant leave to amend under Rule 15 if the amendment would be futile. *Miller v. Calhoun Cnty.,* 408 F.3d 803, 817 (6th Cir. 2005). "Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." *Id.* at 807.

In the tendered amended complaint, the plaintiffs do not add anything that would allow their complaint to survive a motion to dismiss. The plaintiffs include four additional paragraphs under Count I, their Contract Clause claim. [DE 24-2, Tendered First Amended Complaint at ¶¶ 47a-47d.] In these new paragraphs, the plaintiffs merely repeat their allegation that a contract existed between the LFUCG and the members of the Fund, and that the legislative history of KRS 67A.690 evidences the agreement. The Court has already addressed why the plaintiffs' argument that a contractual agreement existed by virtue of KRS 67A.690 is without merit. *See supra pp. 5-6.*

The plaintiffs also seek to include Exhibits 2, 3, and 4, which are House Bills setting out the various amendments to KRS 67A.690 on which the plaintiffs rely. Again, the Court has already considered this legislative history, most notably the 1980 amendments, and found

it is insufficient to support the argument that the plaintiffs have a contract right. *See supra pp. 5-6.*

The plaintiffs' amended complaint and attached exhibits do not add anything that the Court has not already considered in dismissing the plaintiffs' claims. Even with the proposed additions, the plaintiffs' tendered amended complaint fails to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). Therefore, the proposed amendments would be futile, as the amended complaint would not survive a motion to dismiss.

### III. CONCLUSION

For the reasons stated above, the Court's dismissal of the plaintiffs' Contracts Clause, Due Process Clause, and Takings Clause claims was not a clear error. Furthermore, the amendments that the plaintiffs seek to make would be futile. Accordingly, **IT IS ORDERED** that the plaintiffs' motion to alter or amend the Judgment and motion for leave to amend the Complaint (DE 24) are **DENIED.**

Dated September 28, 2015.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY